MICHIGAN MUTUAL LIFE INSURANCE COMPANY v. LEONARD
B. CONANT, ELIZABETH CONANT, SELINA V.
STOUGHTON, CHARLES C. ELLSWORTH
AND JOHN LEWIS.

*Equities based upon ignorance—Constructive notice—Priority among
mortgages—Costs of special defense.*

One cannot claim to be ignorant where reason and experience show
that knowledge would be a necessary consequence of the facts
established.

C gave a mortgage misdescribing the premises, but in another mort-
gage referring to the first, described them differently. A law-
yer, familiar with the land and owning a partnership interest in
an adjacent lot, after examining these mortgages and noticing
the discrepancy, sold his lot to C, and took from him a mort-
gage covering land that the first one ought to have covered. C
then discovered the mistake in the first mortgage and gave a
new one correcting it.. *Held* that the lawyer had had sufficient
notice to put him on inquiry, and could ·not defend against the
foreclosure of the corrected mortgage on the ground of the pri-
ority of his own.

Costs incident to an unsuccessful special defense are imposed on
those who make it, personally, together with full costs of an
appeal based upon it alone; but such costs as are merely inci-
dental to the general proceeding below are shared with the
other defendants.

Appeal from Montcalm. Submitted January 29. De-
cided April 15.

FORECLOSURE. Complainants appeal.

*A. H. & C. M. Wilkinson* and *Hoyt Post* for com-
plainant. Whatever suffices to put parties on inquiry is
in equity sufficient notice, *Norris v. Showerman*, 2 Doug.
[Mich.], 16; a grantee or mortgagee is chargeable with
notice of whatever appears in the chain of title through
which he claims, and of the reasonable inferences there-
from, *Fitzhugh v. Barnard*, 12 Mich., 104; *Case v. Erwin*,
18 Mich., 434; a second mortgagee takes subject to a prior

unrecorded mortgage referred to in the deed to his mortgager and excepted therefrom, *Baker v. Mather*, 25 Mich., 51; one is chargeable with constructive notice, if having such knowledge as would put a prudent man upon inquiry, he avoids making it, *Converse v. Blumrich*, 14 Mich., 109; *Boxheimer v. Gunn*, 24 Mich., 372; *Anderson v. Baughman*, 7 Mich., 69; *Cooper v. Bigley*, 13 Mich., 463; *Jackson v. Neely*, 10 Johns., 374; *Brush v. Ware*, 15 Pet., 93; *Daughaday v. Paine*, 6 Minn., 443; *Hamilton v. Nutt*, 34 Conn., 501; *Harris v. Fly*, 7 Paige, 421·; *Reeder v. Barr*, 4 Ohio, 446; *White v. Foster*, 102 Mass., 375; *Gibert v. Peteler*, 38 Barb., 512; *Russell v. Ransom*, 76 Ill., 167; *Kennedy v. Green*, 3 Myl. & K., 699.

*Ellsworth, Lewis & Sapp* for defendants. The recording laws cannot be made by equitable construction to give constructive notice of matters not shown by the record. *Barnard v. Campau*, 29 Mich., 163; *Barrows v. Baughman*, 9 Mich., 213.

GRAVES, J. This bill was filed to reform and foreclose a mortgage given February 9, 1872, by defendants Conant to complainants to secure a loan of $1,200 running five years with interest at ten per cent. semi-annually. The premises are in the city of Greenville in the county of Montcalm, and the mortgage was written at Detroit by the aid of imperfect data, and very serious mistakes were committed in describing the property.

The want of dates and other particulars which might have been supplied without inconvenience has impeded investigation and now causes some embarrassment, and in regard to several surrounding facts exactness of statement is found ·to be impossible.

It would seem that several years ago about nine acres on the west side of what is called lot three of section fifteen were set apart as a distinct parcel, being about eighty rods in length north and south and about eighteen rods in width east and west, and having a street

along the north end; that one Nathaniel M. Cole, being owner, conveyed in 1866 the entire nine acres to Conant except one hundred and thirty-seven rods in the northwest corner which he retained for a woolen factory and then severed from the main parcel; that at some time another piece was severed for separate enjoyment, and was held by Conant & Kelley; that this fragment was irregular in shape and extended from the street on the north around the east and south sides of the woolen factory lot to the west boundary of the main parcel and adjoined and bounded that lot on the east and south; that it contained ninety-eight one hundredths of an acre and was known as the "foundry lot" or "furnace lot."

When the loan was effected and mortgage given, the former of these small pieces certainly, and possibly the latter also was not owned by Conant, and the design was to so frame the mortgage as to include the residue of the nine-acre parcel and exclude them. They were distinct holdings separately occupied and used, and the fact was sufficiently apparent to make itself known to all persons who directed attention to the situation. On the portion remaining of the nine-acre parcel and standing some distance east of the foundry or furnace lot, there were buildings of considerable value, and this was taken into account in the negotiations concerning the security to be given and received, and it was distinctly understood that they should be embraced by the mortgage.

But when the scrivener came to draw it, he began his description at the northwest corner of the lot, then ran southerly along the west line of the lot eight rods more or less to the southwest corner of the lot; thence east along the south line of the lot one hundred and thirty-two feet; thence north and parallel with the west line of the lot to the northerly line thereof, and thence westerly along the north line of the lot one hundred and thirty-two feet to the place of beginning, and he concluded his description by giving "eight acres of land

more or less" as the quantity included.    The length of
the line north and south is thus spoken of as eight
instead of eighty rods, and the quantity of land as eight
acres,—a circumstance showing there was gross misap-
prehension touching the descriptive features of the prop-
erty meant to be inserted and a palpable miscarriage in
the specification of quantity.    Of course the call for the
southwest corner of the lot would control, so that the
mistake in distance could not have prejudiced the mort-
gage and the statement that there was "eight acres of
land more or less," when according to the distances
given there could have been only sixty-four rods, or
according to the calls for objects, only four acres, could
not, it is probable, have caused much difficulty.

But along with these defects we come to notice oth-
ers of a serious nature.    Giving to the ambiguity in
respect to distance the correction due to it, and instead of
a parcel of about eight acres, or in other words, instead
of the nine-acre parcel with the exception of the woolen
factory lot and foundry lot in the northwest corner, the
description covers only about four acres in all, inclusive
of the woolen factory lot and of part of the foundry lot.
The buildings east of these lots are not embraced, and
the full value of so much of the described premises as
are admitted to have been mortgageable by Conant was
considerably less than the loan.

No one seems to have given any special attention to
the terms of the description as drawn up, and the mort-
gage slipped along through execution and delivery with-
out any detection of its gross infirmity, and on the 26th
of February, 1872, was recorded.    As between the par-
ties to it, the misdescription was first found out by
Conant nearly two years later, namely, the 17th of Feb-
ruary, 1874, and he at once notified complainants.
Until that time he had supposed the description cov-
ered all the nine-acre parcel, except the factory and
foundry lots, and no other property, and as soon as he

discovered the mistake, he and his wife joined in a second mortgage to correct it.

The occurrence of the mistake as claimed is beyond controversy. That is not contested, and the mortgagors make no defense: neither does the defendant Selena V. Stoughton, who holds a later interest.

The objection proceeds from the defendants Lewis and Ellsworth, who are mortgagees of the furnace or foundry lot and of all the rest of the nine-acre parcel except the woolen factory lot and a strip four rods in width east and west and twenty rods in length north and south in the northeast corner of the parcel, and which mortgage they took on the 5th of December, 1873, and hence between the record of the defective mortgage and the execution of the mortgage given to correct it. Their answer makes no denial of the mistake. At some time prior to their mortgage they had acquired the furnace or foundry lot on a foreclosure, and in the fall of 1873 they began negotiating to sell it with certain water power to Conant. The business was conducted wholly by Mr. Lewis, and eventually the parties made a trade, and they received their mortgage in question for between $900 and $1,000 of the purchase money, and claim that they received it in good faith and without knowledge or notice of the mistake in complainant's mortgage or of any fact to cause them to make inquiry about it.

If this position is not impugned the defense must prevail. On the contrary, if the circumstances make out that before taking their mortgage Mr. Lewis became aware that the descriptive part of complainant's mortgage was defective,—that the terms included property not mortgageable by Conant, and that some part at least of the nine acre parcel not embraced was designed to be put in, and was supposed by Conant to be included, the defense must fail.

If he had warning, to that extent he was put upon his guard and was called upon to make reasonable inquiry

before going further to ascertain what premises were meant to be mortgaged to complainants, and the case shows that such investigation would have led to ample knowledge of complainant's equity.   The point is therefore as to what Mr. Lewis understood.

In view of the ownership by his firm of the furnace or foundry lot, and of other circumstances, the inference is unavoidable that he was conversant with the abuttals. Moreover, the evidence is quite clear that he was familiar with the various localities; that he understood that the woolen factory lot had for many years been separately held and could not have been mortgaged by Conant, at the time complainant's mortgage was given, and that the foundry or furnace lot he was selling was considered as not touched by that mortgage.   And the circumstances suggest that he may have known as matter of fact that the foundry lot could not have been mortgaged by Conant at the date of complainant's mortgage.   Upon this specific point the record is left ambiguous, however.   When the expedient of a mortgage to Lewis and Ellsworth for the purchase price of the foundry lot was spoken of, they deemed it important to make a searching examination of the state of the title of the nine-acre parcel.

Mr. Lewis testifies that he immediately proceeded to investigate it; that he called at the abstract office of Jones & Stevens and inspected their books and examined complainant's mortgage and saw the Stoughton mortgage; that he discovered that complainant's mortgage embraced only about one acre of land which belonged to Conant, and that it covered Cole's woolen factory lot; that he found the bounds unlike those in any other papers.

Mr. Jones testifies that the lines in complainant's mortgage not only include the woolen factory lot, but also part of the very foundry lot Lewis sold to Conant. Mr. Lewis is a lawyer and was well acquainted with the localities, the division lines and antecedent modes of

separate enjoyment. Thus aided and impelled by interest, his attention must have been directed in a special manner and under great advantage to the bounds and descriptive terms given, and to all clauses and particulars bearing on the state of the title to the nine-acre parcel.

The mortgage of April, 1873, to Mrs. Stoughton from Conant to indemnify her against complainant's mortgage must have been scrutinized. It declared expressly that the premises it described and covered were the same covered by complainant's mortgage and described them as being the west nine acres of lot three of section fifteen except the furnace lot and woolen factory lot, and hence the same premises intended to have been described in the mortgage to complainants. There was in this a distinct and intelligible intimation by Conant that complainant's mortgage was designed to cover, and by him was supposed to cover, all of the nine-acre parcel except the two lots, and seeing their explanation at the same time the manifest blunders and incongruities were found in complainant's mortgage, Mr. Lewis must have received an impression that there was something essentially wrong in that mortgage; that a misdescription had occurred, and that the instrument was intended to apply to some portion at least of the nine-acre parcel, which the ambiguous language did not purport to embrace. He may not conceive he was apprised that complainant's mortgage was intended to include a larger quantity than was actually described. He so swears in substance. At the same time he testifies that after his search he told Conant he would make the trade and that Conant spoke of having mortgaged a portion of the nine-acre parcel to complainants, whereupon he (Lewis) replied at once that he knew it; that he had examined the records and had seen just what it covered. His present opinion of the bearing and effect of what he saw and knew, or his conception of the kind or extent of belief due to matters within the scope of his attention, cannot be important.

It is not competent to insist upon a state of ignorance when knowledge is the necessary consequence of admitted or established facts, or on any qualification of belief which is repugnant to reason and experience.

He testifies that he does not recollect having talked with Mr. Jones at the abstract office on examining the books, about any mistake in complainant's mortgage. But Mr. Jones testifies very positively that they conversed about such a mistake, and moreover that it was then matter of observation that the boundary did not include as much as was called for, and at the same time took in land Conant did not own. Further detail is needless.

The court is satisfied after an attentive consideration of all the circumstances that Mr. Lewis was cognizant of matters which made it his duty to seek explanation as to how much and what part of the nine-acre parcel was intended to be embraced instead of suppressing it, as he seems to have done, when Mr. Conant began to speak of the mortgage.

Had he then disclosed to Mr. Conant the discrepancies and irregularities discovered, the errors would have been exposed and all ground of controversy removed.

His own testimony shows he recognized serious defects; that he observed that none of the property the terms of description covered was owned by Conant except a small fraction of less value than the consideration; and that part of what was embraced but not owned by Conant was in fact a portion of the very lot he was selling to Conant.

The conclusion from all the circumstances is unavoidable that Mr. Lewis was cognizant of a state of things which necessitated an inference in his mind that the mortgage was intended to include some portion at least which was not embraced of the nine-acre parcel. He was under a duty to make inquiry, and had he made it the whole facts would have been revealed. *Bent v. Coleman,* Sup. Ct. Ill. (7 Reporter, 366). The decree allowing the defense must be reversed with costs to com-

plainant, and a new decree will be entered correcting the mortgage by making it apply to the nine-acre parcel, except the factory and foundry lots, and granting foreclosure of the mortgage as reformed.

The costs are chargeable against the defendants Ellsworth and Lewis so far as they occasioned costs. This would include all the costs and expenses occasioned by the defense set up in their behalf below, with full costs in the Supreme Court. Costs merely incidental to the foreclosure, as unaffected by their special defense, would not be imposed on them personally. The only real controversy in both courts was that concerning the priority of complainant's mortgage over the claim of Ellsworth and Lewis as in fact taken subject to it, and they must bear all the costs of this issue, which is the one on which the expenses were mainly incurred.

CAMPBELL, C. J., and COOLEY, J., concurred. MARSTON, J., did not sit in this case.